IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 23-2147 |
| | : | |
| **BEAL BANK USA, MR. DAVID CORTEZ** | : | |
| | : | |

### **MEMORANDUM**

**KEARNEY, J.**                                                                                              **August 10, 2023**

Incarcerated serial litigant Charles Talbert's now claims a bank and bank employee declined to open a savings account in his name after reviewing his expired driver's license confirming he is a Black man. He sues the bank and its employee for racial discrimination under Title VI and section 1981 along with claims under Pennsylvania Law. Congress limits those liable for discrimination under Title VI to those entities (not individual bank employees) receiving federal financial assistance. Deposit insurance is not federal assistance. Deposit insurance protects the depositors and is not financial assistance to the bank. And Mr. Talbert offers no basis to find the federal government gives financial assistance to Beal Bank. We dismiss the Title VI claims without prejudice as to the bank but with prejudice as to the bank employee.

Mr. Talbert also fails to allege a fact allowing us to plausibly infer the bank or its employee discriminated against him by denying his application based on his race. He wants us to infer a bank and its employee decided to not accept his money and open a savings account because he is Black and most of the bank's customers are White. We have no basis to do so. We dismiss the inadequately plead race discrimination claim. We also dismiss the Pennsylvania claims as we lack a claim over which we enjoy jurisdiction. We grant Mr. Talbert leave to timely amend to plead claims in our limited jurisdiction if he can do so with facts plead in good faith.

I.  **Alleged *pro se* facts.**

Beal Bank USA is a financial institution offering certificate of deposits, money market accounts, statement savings accounts, and individual retirement accounts.[1] Beal Bank belongs to the Federal Deposit Insurance Corporation—a government corporation which provides deposit insurance for banks through the Deposit Insurance Fund.[2] "The greater number of" Beal Bank's customers "are white citizens."[3] David Cortez is the assistant manager at Beal Bank's King of Prussia office located in King of Prussia, Pennsylvania.[4]

### *Mr. Talbert tries to open an account at Beal Bank.*

Mr. Talbert "in an attempt to save and invest his money" sent Beal Bank a letter requesting the appropriate forms to open an account in his name at some unknown time.[5] Beal Bank sent Mr. Talbert a reply letter explaining the different types of accounts it offers along with a new account application on February 28, 2023.[6] Beal Bank directed Mr. Talbert to mail a check, the completed application, and a copy of his driver's license to open an account.[7] Beal Bank, through the reply letter, represented to Mr. Talbert: (1) once funds had arrived at its office, Beal Bank would prepare new account documents and mail them to Mr. Talbert within three to five business days; and (2) Mr. Talbert would begin to earn interest on the date Beal Bank received his check.[8]

Mr. Talbert selected the "statement savings account" option on the application which required a minimum deposit of $500 to yield an annual interest rate of 0.21 percent.[9] Mr. Talbert mailed Beal Bank the completed application, a check for $500, and a copy of his expired driver's license on April 4, 2023.[10]

### *Beal Bank denies Mr. Talbert's application.*

Beal Bank denied Mr. Talbert's application and returned his materials less than a week later on April 10, 2023.[11]

II.  Analysis

Mr. Talbert's latest claim reaches beyond state actors to sue a bank and its assistant manager.[12] He now pro se sues Beal Bank and Assistant Manager Cortez claiming they denied his application to open a savings account "upon receiving [his] materials . . . and noticing [] he was a person of color[.]"[13] Mr. Talbert claims Beal Bank and Assistant Manager Cortez violated his civil rights under Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by denying his application based on his race.[14] Mr. Talbert also brings state law claims against Beal Bank and Assistant Manager Cortez for: violating the Pennsylvania's Unfair Trade Practices and Consumer Protection Law; fraudulently misrepresenting to Mr. Talbert he could open a bank account; breaching an implied contract; and vicarious liability.[15] Mr. Talbert claims Beal Bank and Assistant Manager Cortez "refused to enforce its preliminary agreement with [him] after noticing [] he was a person of color."[16] Mr. Talbert alleges Beal Bank deceived him into parting with personal information; denied him an annual interest rate of 0.21 percent; discriminated against him because of his color and race; and he now suffers from emotional and mental distress.[17] He never mentions seeking a loan. Mr. Talbert seeks monetary damages, punitive damages, costs, fees, and injunctive relief.

Beal Bank and Assistant Manager Cortez move to dismiss Mr. Talbert's amended Complaint.[18] They argue: (1) Mr. Talbert fails to state a claim under Title VI because Beal Bank does not receive "federal financial assistance" and (2) his conclusory allegations do not suffice to state a claim under section 1981.[19] Beal Bank asks we decline to exercise our supplemental jurisdiction over Mr. Talbert's state law claims.[20] Mr. Talbert responds: (1) "the loan product" he applied for could "possibly" be federally funded; and (2) he stated a plausible claim under section 1981 by pleading Beal Bank and Assistant Manager Cortez discriminated against him.[21]

3

### A. We dismiss Mr. Talbert's Title VI claim.

Mr. Talbert alleges Beal Bank and Assistant Manager Cortez violated Title VI of the Civil Rights Act of 1964 because Beal Bank as a member of the Federal Deposit Insurance Corporation denied him a bank account because of his race.[22] Beal Bank and Assistant Manager Cortez argue Beal Bank does not receive "federal financial assistance" so they cannot be sued under Title VI.[23]

Congress, through Title VI of the Civil Rights Act of 1964, prohibits race, color, and national origin discrimination in federally funded programs or activities.[24] To state a claim under Title VI, Mr. Talbert must allege: (1) racial or national origin discrimination; and (2) the entity engaging in discrimination is receiving federal financial assistance.[25] Mr. Talbert may plead either direct or circumstantial evidence of discrimination.[26] Mr. Talbert must show intentional discrimination under Title VI to obtain compensatory relief.[27]

Only entities, not individuals, can be sued under Title VI.[28] Mr. Talbert cannot sue Mr. Cortez under Title VI. We dismiss the Title VI claim against Mr. Cortez with prejudice.

And Mr. Talbert must plead Beal Bank receives federal financial assistance "by way of grant, loan, or contract *other than* a contract of insurance or guaranty[.]"[29] Title VI does not apply to claims against programs or activities not receiving federal financial assistance.[30]

We are guided by Judge Hall in *Marshall v. Webster Bank, N.A.* considering whether a bank customer pleaded a claim under Title VI where the customer alleged the bank received federal financial assistance in the form of deposit insurance from the Federal Deposit Insurance Corporation.[31] Judge Hall acknowledged Congress established the Federal Deposit Insurance Corporation to provide "the benefits of insurance" for deposits in banks and savings associations.[32] Judge Hall reasoned even assuming the Federal Deposit Insurance Corporation insurance is "federal financial assistance" it is federal assistance in the form of a guaranty or contract insurance

4

which is exempt under Title VI.[33] So Judge Hall found the bank customer failed to state a claim under Title VI and dismissed the customer's claim with prejudice.[34]

Mr. Talbert alleges Beal Bank and Assistant Manager Cortez discriminated against him by denying his application to open a savings account because of his race.[35] Mr. Talbert, like the bank customer in *Marshall*, alleges Beal Bank receives deposit insurance from Federal Deposit Insurance Corporation.[36] But Congress, through Title VI, exempts contracts of insurance from its definition of "federal financial assistance[.]"[37] By excluding "contracts of insurance" from Title VI, "Congress intended to prevent Title VI from reaching . . . individual bank accounts in a bank with federally guaranteed deposits."[38] Beal Bank as plead is not a proper party defendant for a Title VI claim. But Mr. Talbert claims he may be able to allege facts "the loan product" he applied for had been federally funded.[39] We caution Mr. Talbert he currently pleads he applied for a savings account—not a loan—from Beal Bank. We remind Mr. Talbert of his obligations under Federal Rule of Civil Procedure 11.[40] But we will allow him one more opportunity to plead a Title VI claim against Beal Bank.

We dismiss with prejudice Mr. Talbert's Title VI claim against Assistant Manager Cortez because Congress precludes individual liability under Title VI. We dismiss Mr. Talbert's Title VI claim against Beal Bank without prejudice if he can allege facts Beal Bank received federal financial assistance.

### B.  Mr. Talbert does not plead a race discrimination claim under 42 U.S.C. § 1981.

Mr. Talbert sues Beal Bank and Assistant Manager Cortez for violating his rights under 42 U.S.C. § 1981 by "refus[ing] [to] enforce its preliminary agreement with [Mr. Talbert] after noticing [] he was a person of color."[41] Beal Bank and Assistant Manager Cortez respond the mere

5

fact Mr. Talbert is Black along with his "baseless speculation" the greater number of Beal Bank's customer are white is insufficient to state a claim under section 1981.[42]

Congress, through section 1981, protects individuals' rights to make and enforce contracts.[43] Congress, through section 1981, guarantees: "[a]ll persons within the . . . United States shall have the same right . . . to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"[44] Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship."[45] To state a claim under 1981, Mr. Talbert must allege: "(1) he is a member of a racial minority; (2) [Beal Bank and Assistant Manager Cortez] intended to discriminate against [him] on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[,]" which includes the right to make and enforce contracts."[46] For the second element, Mr. Talbert must show Beal Bank and Assistant Manager Cortez intentionally discriminated against him "because of race" in a contractual relationship.[47] "A specific factual basis must be pled to create the inference of discrimination."[48]

As to the third element, section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as [Mr. Talbert] has or would have rights under the existing or proposed contractual relationship."[49] "Individuals can face personal liability under Section 1981 if they cause an intentional infringement of an individual's [s]ection 1981 rights or 'if they authorized, directed, or participated in the alleged discriminatory conduct.'"[50]

Mr. Talbert alleges he is a member of a racial minority.[51] And no one disputes Mr. Talbert sought to create a contractual relationship with Beal Bank when he mailed his completed application along with $500, and Beal Bank denied his application.[52] But Beal Bank and Assistant

6

Manager Cortez argue Mr. Talbert fails to meet the second element of his section 1981 claim—pleading Beal Bank and Assistant Manager Cortez intended to discriminate against him on the basis of race.[53] We agree.

Mr. Talbert alleges Beal Bank discriminated against him by denying him an account after "noticing" his race.[54] He baldly alleges the greater number of Beal Bank's customer are white.[55] This bald conclusion about the racial mixture of Beal Bank's customers lacks factual support. Mr. Talbert is incarcerated. He admittedly learned of Beal Bank from a newspaper advertisement. We accept Mr. Talbert's fact allegations as true.[56] But we are not obligated to credit his legal conclusions.[57] Mr. Talbert effectively asks us to infer Beal Bank discriminated against him solely from the fact he sent Beal Bank his expired driver's license (which revealed his race) along with his application, and Beal Bank then declined his application. But Mr. Talbert does not plead sufficient facts to support his legal conclusion Beal Bank discriminated against him based on his race. Even assuming we could somehow join Mr. Talbert in leaping to a conclusion the greater number of Beal Bank's customers are white, this alone does not show Beal Bank denied opening an account for Mr. Talbert because he is Black. And Mr. Talbert does not point to specific conduct by Assistant Manager Cortez to show he authorized, directed, or participated in the alleged discriminatory conduct.

While Mr. Talbert is not required to ***prove*** a discriminatory intent at the motion to dismiss stage, the Supreme Court, through the Federal Rules of Civil Procedure, require him to allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element."[58] We dismiss without prejudice Mr. Talbert's claims under section 1981 against Beal Bank and Assistant Manager Cortez if he can timely amend in good faith with facts to support his legal conclusions of race discrimination in contracts under section 1981.

7

### C. We dismiss Mr. Talbert's state law claims.

Mr. Talbert invoked our limited federal question jurisdiction. We today dismiss all his claims over which we have original jurisdiction. But Mr. Talbert also brings state law claims against Beal Bank and Assistant Manager Cortez for: (1) violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law; (2) fraudulently misrepresenting to Mr. Talbert he could open a bank account; (3) breaching an implied contract; and (4) vicarious liability.[59]

We could exercise supplemental jurisdiction over Mr. Talbert's state law claims under 28 U.S.C. § 1367(a). But our supplemental jurisdiction is discretionary.[60] We may consider our supplemental jurisdiction sua sponte.[61] We "may decline to exercise supplemental jurisdiction" over a claim if one of four factors exists:

(1) the claim raises a novel or complex issue of State law

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[62]

We decline to exercise supplemental jurisdiction over Mr. Talbert's state law claims because we dismissed all claims over which we have original jurisdiction.[63] We dismiss Mr. Talbert's state law claims without prejudice if Mr. Talbert can amend in good faith to establish a basis for our limited jurisdiction through some form of federal question jurisdiction.

## III. Conclusion

We recognize Mr. Talbert is disappointed private entity Beal Bank does not want to open a savings account in his name. But he cannot sue Assistant Manager Cortez under Title VI as matter of law. And we dismiss his Title VI claim against Beal Bank without prejudice. Mr. Talbert

8

also fails to state a claim against Beal Bank or Assistant Manager Cortez under section 1981. We will not exercise our supplemental jurisdiction over Mr. Talbert's state law claims. We dismiss Mr. Talbert's section 1981 and his state law claims without prejudice.

---

[1] ECF No. 10 ¶ 2.

[2] *Id*. ¶ 29.

[3] *Id*. ¶ 33.

[4] *Id*. ¶ 3.

[5] *Id*. ¶ 7.

[6] *Id*. ¶ 8.

[7] *Id*. ¶ 9.

[8] *Id*. ¶ 10.

[9] *Id*. ¶ 12.

[10] *Id*. ¶ 14. Mr. Talbert attached to his Complaint the documents he sent to Beal Bank, which included a copy of his driver's license with an expiration date of May 31, 2020. *Id*. at 14. "[I]n addition to the complaint itself, the court can review documents attached to the complaint and matters of public record." *McTernan v. City of York, Penn*., 577 F.3d 521, 526 (3d Cir. 2009) (citing *Lum v. Bank of America*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)).

[11] ECF No. 10 ¶ 15.

[12] ECF No. 10 ¶ 4. Mr. Talbert regularly sues state actors leading us to bar his continued filings without paying the docket fees unless he faces imminent harm of danger. We detailed Mr. Talbert's history of filing complaints while incarcerated including his status as a "three-strike" serial litigant in our April 5, 2019 memorandum in *Talbert v. Carney*. Nos. 19-1340, 19-1341, 2019 WL 1516940, at *3 n.19 (E.D. Pa. Apr. 5, 2019). Mr. Talbert filed "at least fifty-four lawsuits" in our District by April 2019. *Id.* at *3. We dismissed at least four pro se complaints as frivolous or failing to state a claim from 2013 to 2016. *Id.* We reviewed his April 2019 complaint in *Talbert v. Carney* under section 1915(g) and required Mr. Talbert plead imminent danger of serious physical injury before being allowed to proceed without paying the filing fees. *Id.* We then declined his motion to proceed *in forma pauperis* because he did not plead imminent danger. *Id.* Mr. Talbert paid the filing fee for this claim against private actors Beal Bank and Mr. Cortez. ECF No. 2.

[13] *Id*. We granted Mr. Talbert leave to file an amended Complaint on June 26, 2023. *See* ECF No. 9. He thereafter mailed the amended Complaint to Beal Bank and Mr. Cortez. He cannot amend again without our approval.

---

[14] ECF No. 10 ¶¶ 27–34.

[15] *Id*. ¶¶ 17–26, 35–43.

[16] *Id*. ¶ 34.

[17] *Id*. ¶ 16.

[18] ECF No. 19. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," we should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id*. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Complaints filed by *pro se* litigants, such as Mr. Talbert, are liberally construed, but must still "allege sufficient facts . . . to support a claim." *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) (quoting *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted)).

[19] ECF No. 19-1 at 5–9. Beal Bank and Assistant Manager Cortez mention Mr. Talbert's attempt to serve Beal Bank's King of Prussia location by regular mail amounted to ineffective service of process. *See* ECF No. 19-1 at 4 n.2. But they do not object to service. *Id*. We construe their Motion

to dismiss under Rule 12(b)(6) as accepting service of Mr. Talbert's amended Complaint. "[T]he law is clear: A party who makes a pre-answer Rule 12 motion must raise the specific defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process in the first motion or the defenses are deemed waived." *Cath. Mut. Relief Soc'y of Am. v. Acer Am. Corp.*, No. 22-2600, 2023 WL 3997977, at *5 (E.D. Pa. June 14, 2023) (internal citations and quotations omitted).

[20] ECF No. 19-1 at 9–12.

[21] ECF No. 26.

[22] ECF No. 10 ¶¶ 27–31.

[23] ECF No. 19-1 at 5–7.

[24] Congress, through Title VI of the Civil Rights Act of 1964, provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[25] *Ke v. Drexel Univ.*, No. 11-6708, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015), *aff'd sub nom. Lei Ke v. Drexel Univ.*, 645 F. App'x 161 (3d Cir. 2016) (internal citations omitted).

[26] *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 665 (E.D. Pa. 2019) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014)).

[27] *Valentin v. Esperanza Hous. Counseling*, No. 18-1984, 2019 WL 3496256, at *3 (E.D. Pa. July 31, 2019), *aff'd*, 834 F. App'x 745 (3d Cir. 2021).

[28] *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) ("Individual liability may not be asserted under Title VI.").

[29] 42 U.S.C. § 2000d-1 (emphasis).

[30] *Valentin*, 2019 WL 3496256, at *2.

[31] *Marshall v. Webster Bank, N.A.*, No. 10-908, 2011 WL 219693, at *7 (D. Conn. Jan. 21, 2011).

[32] *Id.* at n.5.

[33] *Id.* at *7.

[34] *Id.*

[35] ECF No. 10 ¶ 31.

[36] *Id.* ¶ 29.

[37] 42 U.S.C. § 2000d-1.

---

[38] *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1048 (5th Cir. 1984) (internal citations omitted).

[39] ECF No. 26 at 4.

[40] *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]").

[41] ECF No. 10 ¶ 34.

[42] ECF No. 19-1 at 7–9.

[43] *Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 272 (E.D. Pa. 2020).

[44] 42 U.S.C.§ 1981(a).

[45] *Valentin*, 2019 WL 3496256, at *4 (quoting *Mahmoud Sayed-Aly v. Tommy Gun*, 170 F. Supp. 3d 771, 775 (E.D. Pa. 2016)).

[46] *Mickman v. Superior Ct. of Pennsylvania*, No. 23-2047, 2023 WL 4873637, at *5 (E.D. Pa. July 31, 2023) (internal citations omitted).

[47] *Rhoades v. Days Inn by Wyndham*, No. 21-01990, 2023 WL 4565467, at *3 (M.D. Pa. July 17, 2023) (quoting *Katchur*, 354 F.Supp.3d at 668).

[48] *Valentin*, 2019 WL 3496256, at *4.

[49] *Rhoades*, 2023 WL 4565467, at *3 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)).

[50] *Ismail v. Honeywell Int'l, Inc.*, No. 21-143, 2023 WL 2385135, at *5 (M.D. Pa. Mar. 6, 2023) (internal citations omitted).

[51] ECF No. 10 ¶ 34.

[52] *Id.* ¶ 14.

[53] ECF No. 19-1 at 7–9.

[54] ECF No. 10 ¶ 34.

[55] *Id.* ¶ 33.

[56] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

[57] *Id.*

[58] *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

[59] ECF No. 10 ¶¶ 17–26, 35–43.

[60] *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

[61] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[62] 28 U.S.C. § 1367(c); *see also Patel*, 666 F. App'x at 136.

[63] 28 U.S.C. § 1367(c)(3).