**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES TALBERT** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-2147** |
| | : | |
| **BEAL BANK USA, MR. DAVID** | : | |
| **CORTEZ** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                    **October 4, 2023**

The Department of Corrections briefly retained custody of serial incarcerated litigant Charles Talbert at SCI Phoenix in this District earlier this year. Mr. Talbert, a Black person, applied for a statement savings account at a local bank. The bank mailed him an application to his address at SCI Phoenix. He returned the application along with his photo identification and deposit. The bank decided not to open an account for him and returned his application and money. The bank did not explain why it declined his application.

The incarcerated Mr. Talbert sued the bank and its branch assistant manager for declining his application. We dismissed his first complaint several weeks ago for failing to state a claim but granting him leave to amend. He amended his allegations and now broadly pleads, without facts, the bank is subject to federal law because it invests money in the stock market and is regulated by the Securities and Exchange Commission, does not like to do business with Black customers, conspires with its branch manager and shareholders against Black depositors, and violated Pennsylvania law. Mr. Talbert's conclusory assumption and unmoored theories are not facts; we must have facts from which we can plausibly infer a claim. Mr. Talbert pleads no facts in his second attempt to bring a race-based claim challenging a private bank's denial of his deposit application. We dismiss his federal claims with prejudice after two attempts and we dismiss his Pennsylvania law claims without prejudice to timely pursue in state court.

I.      **Alleged *pro se* facts.**

Beal Bank is a private bank offering competitive rates on certificates of deposit, money market accounts, statement savings accounts, and individual retirement accounts.[1] Beal Bank provides a wide range of financial services to the general public and to firms.[2] It is a member of the Federal Deposit Insurance Corporation.[3] "The greatest number of" Beal Bank's customers are "white citizens."[4] David Cortez is the assistant manager at a Beal Bank location in Montgomery County, Pennsylvania.[5]

Charles Talbert saw Beal Bank's advertisements in the Philadelphia Inquirer.[6] He sent Beal Bank a letter requesting the appropriate forms to open an account in his name in February 2023.[7] Beal Bank replied to Mr. Talbert directing him to fill out and send back an enclosed application, a copy of a current identification, and a check on February 28, 2023.[8] Beal Bank represented to Mr. Talbert: (1) new account documents would be prepared and mailed to him within three to five business days once funds had arrived at its office; and (2) Mr. Talbert would begin to earn interest on the date Beal Bank received his check.[9]

Mr. Talbert selected the "statement savings account" option on the application which required a minimum deposit of $500 to yield an annual interest rate of 0.21 percent.[10] Mr. Talbert mailed Beal Bank the completed application, a check for $500, and a copy of his expired driver's license on April 4, 2023.[11]

Beal Bank denied Mr. Talbert's application and returned his materials less than a week later.[12] Beal Bank did not explain to Mr. Talbert why it denied his application.[13]

II.     **Analysis**

Mr. Talbert sued Beal Bank and a branch Assistant Manager David Cortez. He claimed Beal Bank and Assistant Manager Cortez violated his civil rights under Title VI of the Civil

Rights Act of 1964 and 42 U.S.C. § 1981 by denying his application based on his race.[14] Mr. Talbert also brings state law claims against Beal Bank and Assistant Manager Cortez for: (1) violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law; (2) fraudulently misrepresenting to Mr. Talbert he could open a bank account; (3) breaching an implied contract; and (4) vicarious liability. We dismissed his claims with leave to amend.[15]

Mr. Talbert now amends claiming Beal Bank and its branch Assistant Manager Cortez denied his application to open a savings account as part of a nationwide conspiracy "in conformity with its... practice of disproportionately discriminating against people of color in the opening of statement savings accounts[.]"[16] Mr. Talbert again claims Beal Bank and Assistant Manager Cortez violated his civil rights under Title VI and section 1981 by denying his application based on race.[17] Mr. Talbert adds a claim Beal Bank engaged in a conspiracy to ensure white citizens comprise a majority of its customers under 42 U.S.C. § 1985(3).[18] Mr. Talbert also claims Beal Bank and Assistant Manager Cortez violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law; fraudulently misrepresented to Mr. Talbert he could open a bank account; breached an implied contract; and Beal Bank is vicariously liable for Assistant Manager Cortez's actions.[19]

Mr. Talbert speculates Beal Bank and Assistant Manager Cortez rejected his application "upon realizing he was a person of color."[20] Mr. Talbert alleges Beal Bank and Assistant Manager Cortez rejected his application as part of a greater conspiracy to deny saving accounts to people of color.[21] Mr. Talbert alleges Beal Bank deceived him into parting with personal information; denied him an annual interest rate of 0.21 percent; discriminated against him because of his race; engaged in conspiracy to disproportionately serve "white citizens"; and he

now suffers from emotional and mental distress.[22] Mr. Talbert seeks monetary damages, punitive damages, costs, and fees.[23]

Beal Bank and Assistant Manager Cortez move to dismiss the amended Complaint.[24] They argue: (1) Mr. Talbert fails to state a claim under Title VI because Beal Bank does not receive "federal financial assistance"; (2) his conclusory allegations do not suffice to state a claim under section 1981; and (3) he cannot allege a section 1985 conspiracy.[25] Beal Bank asks we decline to exercise our supplemental jurisdiction over Mr. Talbert's state law claims.[26] Mr. Talbert responds: (1) Beal Bank receives federal financial assistance in its "corporate assets" to which Beal Bank "statement saving accounts generate funds to maximize the return on its own investments in the stock market"; (2) he states a plausible claim under section 1981 by pleading circumstantial evidence Beal Bank and Assistant Manager Cortez discriminated against him in conformity with its "widespread marketing scheme to surreptitiously provide accounts over the mail disproportionately to white citizens" upon viewing their photo IDs; and (3) he stated a plausible  claim under section 1985 by pleading a widespread national conspiracy between Beal Bank and its unnamed shareholders to use a marketing scheme to provide statement saving accounts disproportionately to white citizens.[27] Mr. Talbert asks us to exercise our discretionary supplemental jurisdiction over his state law claims in the interest of judicial economy, convenience, and fairness.[28] We analyze Mr. Talbert's pro se claims under the familiar standard for a motion to dismiss.

**A.  We dismiss Mr. Talbert's Title VI claim with prejudice.**

Mr. Talbert again alleges Beal Bank violated Title VI because Beal Bank denied him a bank account because of his race.[29] Beal Bank argues Title VI does not apply because Beal Bank does not receive "federal financial assistance[.]"[30] Mr. Talbert speculates Beal Bank receives

federal financial assistance because it is regulated by the Securities Exchange Act and it invests funds generated by its statements savings accounts in the stock market to maximize its return on investment.[31] Mr. Talbert does not include facts alleging Beal Bank receives federal financial assistance. We dismiss his Title VI claim with prejudice.

Congress, through Title VI of the Civil Rights Act of 1964, prohibits race, color, and national origin discrimination in federally funded programs or activities.[32] Mr. Talbert must allege: (1) racial or national origin discrimination; and (2) the entity engaging in discrimination is receiving federal financial assistance.[33] Mr. Talbert may plead either direct or circumstantial evidence of discrimination.[34] Mr. Talbert must show intentional discrimination under Title VI to obtain compensatory relief.[35]

Mr. Talbert must plead Beal Bank receives federal financial assistance "by way of *grant, loan, or contract* other than a contract of insurance or guaranty[.]"[36] Congress's prohibitions in Title VI do not apply to claims against programs or activities not receiving federal financial assistance.[37]

We earlier explained Federal Deposit Insurance Corporation deposit insurance is not federal financial assistance.[38] Mr. Talbert now alleges a new theory. He claims Beal Bank is regulated under the Securities Exchange Act and invests federally regulated products into the stock market.[39] He offers no basis to support his speculation. Mr. Talbert baldly claims "[Beal Bank] receives federal financial assistance in its own corporate assets, to which statement savings accounts generate funds to maximize the return on its own investments in the stock market."[40]

We construe Mr. Talbert's pro se complaint liberally. Mr. Talbert claims the Securities Exchange Act regulates Beal Bank and its investments.[41] Beal Bank denies it is regulated under

the Securities Exchange Act because Beal Bank is "neither a securities exchange nor an over-the counter market[.]"[42] Even if Beal Bank is regulated under the Securities Exchange Act, Mr. Talbert fails to plead Beal Bank receives a grant, loan, or contract from the federal government.[43] Federal regulation is not federal financial assistance. Mr. Talbert's bald conclusion, "[Beal Bank] receives federal financial assistance" is unsupported by facts.[44] It is unclear how Beal Bank allegedly investing funds generated from statement savings accounts into the stock market (even if true) could be considered federal financial assistance.[45]

We dismiss Mr. Talbert's Title VI claim against Beal Bank with prejudice as Mr. Talbert now twice fails to allege facts Beal Bank received federal financial assistance.

**B.  We dismiss Mr. Talbert's section 1981 race discrimination claim with prejudice.**

Mr. Talbert again alleges Beal Bank and Assistant Manager Cortez violated his rights under section 1981 because "upon acknowledging Plaintiff as being a person of color in his ID, and staying in compliance with [Beal Bank's] aforesaid marketing scheme to attract white citizens and weed out blacks, Mr. Cortez had renounced their deal and refused to uphold his promise."[46] Beal Bank and Assistant Manager Cortez respond the mere fact Mr. Talbert is Black along with his "baseless speculation" the greater number of Beal Bank's customer are white is insufficient to state a claim under section 1981.[47] Mr. Talbert argues he pleads circumstantial evidence of Beal Bank denying his saving account application because of its widespread marketing scheme to surreptitiously provide accounts over the mail disproportionately to white citizens by looking at applicant's ID cards to determine the applicant's race and color.[48] We earlier dismissed Mr. Talbert's claim without prejudice with leave to amend in good faith with facts to support his legal conclusions of race discrimination in contracts under section 1981.[49] Mr. Talbert fails to plead such facts. We dismiss his amended section 1981 claim with prejudice.

Congress, through section 1981, protects individuals' rights to make and enforce contracts.[50] Congress, through section 1981, guarantees: "[a]ll persons within the ... United States shall have the same right ... to make and enforce contracts ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"[51] Congress, through section 1981, "offers relief when racial discrimination blocks the creation of a contractual relationship."[52] To state a section 1981 claim, Mr. Talbert must allege: "(1) he is a member of a racial minority; (2) [Beal Bank and Assistant Manager Cortez] intended to discriminate against [him] on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute[,]" which includes the right to "make and enforce contracts."[53] For the second element, Mr. Talbert must plead Beal Bank and Assistant Manager Cortez intentionally discriminated against him "because of race" in a contractual relationship.[54] "A specific factual basis must be pled to create the inference of discrimination."[55]

As to the third element, Congress, through section 1981, "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as [Mr. Talbert] has or would have rights under the existing or proposed contractual relationship."[56] "Individuals can face personal liability under Section 1981 if they cause an intentional infringement of an individual's Section 1981 rights or 'if they authorized, directed, or participated in the alleged discriminatory conduct.'"[57]

Mr. Talbert alleges he is a member of a racial minority.[58] Beal Bank does not dispute Mr. Talbert sought to create a contractual relationship with Beal Bank when he mailed his completed application along with $500.[59] Beal Bank does not dispute it declined his application.[60] We earlier dismissed Mr. Talbert's section 1981 claim because he failed to plead Beal Bank and

Assistant Manager Cortez intended to discriminate against him on the basis of race.[61] Mr. Talbert pleads no new facts to meet this element.

Mr. Talbert again alleges Beal Bank discriminated against him by denying him an account after "acknowledging" his race.[62] He again baldly alleges the greater number of Beal Bank's customer are white.[63] This bald conclusion about the racial mixture of Beal Bank's customers still lacks factual support. We accept Mr. Talbert's fact allegations as true. But we are not obligated to credit his legal conclusions. Mr. Talbert still asks us to infer Beal Bank discriminated against him solely from the fact he sent Beal Bank his expired driver's license (which revealed his race) along with his application, and Beal Bank then declined his application without explanation. But Mr. Talbert still does not plead sufficient facts to support his legal conclusion Beal Bank discriminated against him based on his race. Even assuming we could somehow join Mr. Talbert in a quantum leap to a conclusion the greater number of Beal Bank's customers are white, this alone does not show Beal Bank denied opening an account for Mr. Talbert because he is Black. Mr. Talbert still has not pleaded specific conduct by Assistant Manager Cortez to show he authorized, directed, or participated in the alleged discriminatory conduct.

We explained to Mr. Talbert the Supreme Court, through the Federal Rules of Civil Procedure, require him to allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element."[64] Mr. Talbert's unsupported conclusion Beal Bank's practice of racial discrimination "can be proven through discovery" is insufficient to meet this expectation.[65] We dismiss Mr. Talbert's claims under section 1981 with prejudice.

### C.  We dismiss Mr. Talbert's section 1985 claim with prejudice.

Mr. Talbert adds a section 1985 conspiracy to interfere with civil rights claim against Beal Bank and Assistant Manager Cortez.[66] Mr. Talbert claims Beal Bank and Mr. Cortez established and maintained a "widespread national conspiracy" by marketing its services to disproportionately provide statement savings accounts to "white citizens."[67] Beal Bank and Assistant Manager Cortez argue Mr. Talbert fails to plead a conspiracy.[68] Mr. Talbert responds pleading a conspiracy between Beal Banks and its shareholders "through the mail" is sufficient factual matter to state a plausible claim for relief.[69] We find Mr. Talbert fails to plead a conspiracy.

Mr. Talbert needs to plead "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property, or the deprivation of any right" to establish a 1985(3) claim.[70] We analyze a  conspiracy claim between a corporation and its agents under the intra-corporate conspiracy doctrine.[71]

"[T]he intra-corporate conspiracy doctrine provides that 'an entity cannot conspire with one who acts as its agent.'"[72] The Supreme Court acknowledges a Circuit split on the appropriateness of the intra-corporate conspiracy doctrine in the context of section 1985 conspiracy claims.[73] Our Court of Appeals applies the intra-corporate conspiracy doctrine to section 1985 conspiracy claims.[74] An alleged conspiracy between a corporation and its officer in their work-related capacities cannot satisfy the first element of a section 1985(3) claim.[75] An exception exists "when the employees have acted for their sole personal benefit."[76]

Mr. Talbert fails to allege a conspiracy. Mr. Talbert's alleged conspiracy is between Beal Bank, Mr. Cortez, and Beal Bank's unnamed shareholders.[77] Mr. Talbert does not plead facts allowing us to infer Assistant Manager Cortez acted in the conspiracy for his own personal benefit.[78] Beal Bank, its employee, and its shareholders cannot conspire in their official capacity.[79] Beal Bank, its employee, and its shareholders are considered one entity for the purposes of today's conspiracy claim.[80] Mr. Talbert fails to plead the existence of a conspiracy. We dismiss his section 1985(3) conspiracy claim with prejudice.

### D.  We dismiss Mr. Talbert's state law claims without prejudice.

Mr. Talbert invoked our limited federal question jurisdiction. We today dismiss with prejudice all of his amended claims over which we have original jurisdiction. But Mr. Talbert also brings state law claims against Beal Bank and Assistant Manager Cortez for: (1) violating Pennsylvania's Unfair Trade Practices and Consumer Protection Law; (2) fraudulently misrepresenting to Mr. Talbert he could open a bank account; (3) breaching an implied contract; and (4) vicarious liability.[81]

We could exercise supplemental jurisdiction over Mr. Talbert's state law claims under 28 U.S.C. § 1367(a). But our supplemental jurisdiction is discretionary.[82] We may consider our supplemental jurisdiction sua sponte.[83] We "may decline to exercise supplemental jurisdiction" over a claim if one of four factors exists:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[84]

We decline to exercise supplemental jurisdiction over Mr. Talbert's state law claims because we dismissed all claims over which we have original jurisdiction.[85] We dismiss Mr. Talbert's state law claims without prejudice with leave to refile in state court.

### III.   Conclusion

We recognize Mr. Talbert is disappointed Beal Bank does not want to open a savings account in his name. But Congress limits those liable for discrimination under Title VI to those entities receiving federal financial assistance. Mr. Talbert baldly claims Beal Bank receives federal financial assistance through its own corporate assets because Beal Bank is regulated under the Securities Exchange Act. Federal regulation is not federal financial assistance. Mr. Talbert offers no basis to find the federal government gives financial assistance to Beal Bank. We dismiss the Title VI claims with prejudice.

Mr. Talbert again fails to allege a fact allowing us to plausibly infer Beal Bank or Assistant Manager Cortez discriminated against him by declining to process his application based on his race. He wants us to infer Beal Bank and Assistant Manager Cortez decided not to accept his money and open a savings account because he is Black and most of Beal Bank's customers are white. He pleads no facts to support this conclusion. We dismiss his second attempt at pleading the race discrimination claim with prejudice.

Mr. Talbert fails to allege facts allowing us to plausibly infer a conspiracy to interfere with his civil rights. He fails to plead a conspiracy between anyone other than Beal Bank, its employee, and its shareholders, which are one entity for a conspiracy claim. We dismiss the

conspiracy claims with prejudice. We dismiss the Pennsylvania claims without prejudice as we

lack a claim over which we enjoy jurisdiction.

---

[1] ECF No. 32 ¶ 2.

[2] *Id.* ¶ 4.

[3] *Id.* ¶ 8.

[4] *Id.* ¶ 14. We take judicial notice of public records indicating 78.2% of Montgomery County residents are white. "In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)).; *see* Quickfacts, Montgomery County, Pennsylvania, United States Census 2022 (last visited October 4, 2023), available at https://www.census.gov/quickfacts/fact/table/montgomerycountypennsylvania/RHI125222.

[5] *Id.* ¶ 3.

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 18. Mr. Talbert presumably mailed his letter to Beal Bank from his custodial facility.

[8] *Id*. ¶ 19.

[9] *Id.* ¶ 20.

[10] *Id.* ¶ 22.

[11] *Id.* ¶ 24.

[12] *Id.* ¶ 25.

[13] *Id.* ¶ 26.

[14] ECF No. 10 ¶¶ 27-34.

[15] We dismissed Mr. Talbert's earlier complaint with leave to amend. *Talbert v. Beal Bank USA*, No. 23-2147, 2023 WL 5153517 (E.D.Pa. Aug. 10, 2023). Mr. Talbert earlier failed to plead Beal Bank could be sued under Title VI because he did not plead Beal Bank is federally funded. *Id.* at *3-*4. We explained deposit insurance is not federal funding. *Id*. We dismissed his Title VI claim against Mr. Cortez with prejudice because Congress does not permit individual liability under Title VI. *Id.* at *4. We dismissed his section 1981 claim without prejudice for failing to plead Beal Bank and David Cortez intended to discriminate against him based on his race. *Id.* at

\*4-\*5. We declined to exercise supplemental jurisdiction over his state law claims because we dismissed all claims over which we enjoyed original jurisdiction. *Id.* at \*5-\*6.

[16] ECF No. 32 ¶ 25.

[17] *Id* at ¶¶ 41-47.

[18] *Id.* ¶¶ 48-49.

[19] *Id.* ¶¶ 32-40, 50-55.

[20] *Id.* ¶ 40.

[21] *Id.* ¶ 48.

[22] *Id.* ¶ 31.

[23] *Id.* ¶¶ 36, 40, 44, 47, 49, 54-55.

[24] ECF No. 33. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," we should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." Id. (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that …'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that

can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

Complaints filed by *pro se* litigants, such as Mr. Talbert, are liberally construed, but must still "allege sufficient facts . . . to support a claim." *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted)).

[25] ECF No. 33-1 at 6-12.

[26] ECF No. 33 at 3.

[27] ECF No. 35 at 3, 5-6.

[28] *Id.* at 6.

[29] ECF No. 32 ¶¶ 41-44.

[30] ECF No. 33-1 at 6-8.

[31] *Id.* ¶¶ 27-29.

[32] As we earlier explained to Mr. Talbert, Congress, through Title VI of the Civil Rights Act of 1964, provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[33] *Ke v. Drexel Univ.,* No. 11-6708, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015), *aff'd sub nom. Lei Ke v. Drexel Univ.*, 645 F. App'x 161 (3d Cir. 2016) (internal citations omitted).

[34] *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 665 (E.D. Pa. 2019) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014)).

[35] *Valentin v. Esperanza Hous. Counseling*, No. 18-1984, 2019 WL 3496256, at *3 (E.D. Pa. July 31, 2019), *aff'd*, 834 F. App'x 745 (3d Cir. 2021).

[36] 42 U.S.C. § 2000d-1 (emphasis added).

[37] *Valentin*, 2019 WL 3496256 at *2.

[38] *Talbert v. Beal Bank USA*, No. 23-2147, 2023 WL 5153517 (E.D.Pa. Aug. 10, 2023).

[39] ECF No. 32 ¶¶ 27-29.

[40] *Id.* ¶ 29.

[41] *Id.* ¶¶ 27-29.

[42] ECF No. 33-1 at 7.

[43] *Badger v. City of Phila. Off. of Prop. Assessment*, 563 Fed. Appx. 152, 154 (3d. Cir. 2014) ("Complaints filed pro se are construed liberally, but even 'a pro se complaint must state a plausible claim for relief.'") (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

[44] ECF No. 32 ¶ 29.

[45] Congress, through 12 U.S.C. § 1851 (the "Volcker Rule"), appears to prohibit proprietary trading by banking entities like Beal Bank. Beal Bank cannot invest savings account funds in the stock market as a matter of federal law.

[46] *Id.* ¶ 47.

[47] ECF No. 33-1 at 8-10.

[48] ECF No. 35 at 4-5.

[49] *Talbert*, 2023 WL 5153517 at *5.

[50] *Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 272 (E.D. Pa. 2020).

[51] 42 U.S.C. § 1981(a).

[52] *Valentin*, 2019 WL 3496256, at *4 (quoting *Sayed-Aly v. Tommy Gun, Inc.*, 170 F. Supp. 3d 771, 776 (E.D. Pa. 2016)).

[53] *Mickman v. Superior Ct. of Pennsylvania*, No. 23-2047, 2023 WL 4873637, at *5 (E.D. Pa. July 31, 2023) (internal citations omitted).

[54] *Rhoades v. Days Inn by Wyndham*, No. 21-01990, 2023 WL 4565467, at *3 (M.D. Pa. July 17, 2023) (quoting *Katchur*, 354 F. Supp. 3d at 668).

[55] *Frederick v. Se. Pennsylvania Transp. Auth.*, 892 F. Supp. 122, 125 (E.D. Pa. 1995).

[56] *Rhoades*, 2023 WL 4565467 at *3 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)).

[57] *Randolph v. Allied Crawford Steel, Inc.*, No. 1:20-CV-01735, 2021 WL 1666980, at *3 (M.D. Pa. Apr. 28, 2021) (quoting *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986) *aff'd*, 481 U.S. 604 (1987)).

---

[58] ECF No. 32 ¶ 40.

[59] ECF No. 33-1 at 8-9.

[60] *Id.*

[61] *Talbert*, 2023 WL 5153517 at *5.

[62] ECF No. 32 ¶ 47.

[63] *Id.* ¶ 14.

[64] *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).

[65] ECF No. 32 ¶ 16.

[66] *Id.* ¶¶ 48-49.

[67] *Id.* ¶ 48.

[68] ECF No. 33-1 at 10-12.

[69] ECF No. 35 at 6.

[70] *Whitehead v. Wetzel*, 720 Fed. App'x. 657, 662 (3d Cir. 2017).

[71] *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017).

[72] *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *1 (3d Cir. June 16, 2023) (quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003)).

[73] *Ziglar*, 582 U.S. at 153 ("There is a division in the courts of appeals, moreover, respecting the validity or correctness of the intracorporate-conspiracy doctrine with reference to § 1985 conspiracies. Nothing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation.") (internal citations omitted).

[74] *Abadi*, 2023 WL 4045373 at *1.

[75] *Benlian v. Peco Energy Corp.*, No. 15-2128, 2016 WL 3951664 at *8 (E.D. Pa. July 20, 2016) (citing *Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 2008)).

[76] *Heffernan v. Hunter*, 189 F.3d 405, 412-13 (3d Cir. 1999)).

[77] ECF No. 32 ¶ 48.

[78] *Hefferman*, 189 F.3d at 412-13.

[79] *Robison*, 848 F.2d at 431.

[80] *Duffy v. Laws. Title Ins. Co.*, 972 F. Supp. 2d 683, n. 32 (citing *Gen. Refractories*, 337 F.3d at 313 (3d Cir. 2003) (applying Pennsylvania law)).

[81] ECF No. 32 ¶¶ 32-40, 50-54, 55.

[82] *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

[83] *See Patel v. Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).

[84] 28 U.S.C. § 1367(c); *see also Patel*, 666 F. App'x at 136.

[85] 28 U.S.C. § 1367(c)(3).